**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CHARLES WILLIAM ROBINSON III,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civ. No. MJM-26-0020** |
| | * | |
| **LENDING CLUB BANK, *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |

* * * * * * * * * * *

# MEMORANDUM OPINION

Self-represented plaintiff Charles William Robinson III ("Plaintiff") brought suit against Lending Club Bank and Lending Club Corporation (together, "LendingClub"), LVNV Funding LLC ("LVNV"), and Resurgent Capital Services ("Resurgent") (collectively, "Defendants") for alleged violations of the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Maryland Consumer Protection Act ("MCPA"). LVNV and Resurgent removed this matter from state court to this Court. ECF 1. Now pending before the Court are LVNV and Resurgent's Joint Motion to Dismiss or for a More Definite Statement, ECF No. 8; Plaintiff's Motion to Remand, ECF No. 10; and LendingClub's Motion to Compel Arbitration and Stay Proceedings, or in the Alternative, to Dismiss the Complaint, ECF No. 14.[1] No hearing is necessary. Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the Court shall deny Plaintiff's Motion to Remand, grant LVNV and Resurgent's Motion to Dismiss, and grant LendingClub's Motion to Compel Arbitration and Stay Proceedings.

[1] Plaintiff also filed a Motion for Leave to File Response Out of Time, ECF No. 20, which shall be granted. Considering the minimal delay in Plaintiff's response, Plaintiff's self-represented status, and the lack of prejudice to LendingClub, the Court finds Plaintiff's request to be justified by good cause and excusable neglect under Federal Rule of Civil Procedure 6(b)(1).

## I. BACKGROUND

On September 5, 2021, Plaintiff applied for a loan of $36,000 from LendingClub, which was approved. ECF 15-1, ¶¶ 7, 8. To successfully submit the loan application, Plaintiff clicked a button accepting the Borrower Agreement. *Id.* ¶¶ 11–15. The Borrower Agreement contained an arbitration clause, the pertinent parts of which read as follows:

> Either you or we may, at either's sole election, require that the sole and exclusive forum for resolution of a Claim be final and binding arbitration pursuant to this Section 16 ("Arbitration Agreement"), unless you opt out as provided in Section 16(b) below. . . .
>
> As used in this Arbitration Agreement, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and us (or persons claiming through or connected with us), on the other hand, relating to or arising out of the Borrower Agreement, the Loan Agreement, any Service (including but not limited to the Site and the LC Platform), any loan application, loan request, or loan, and/or the activities or relationships that involve, lead to, or result from any of the foregoing. Claims are subject to arbitration regardless of whether they arise from contract, tort (intentional or otherwise), a constitution, statute, common law, principles of equity, or any other legal theory.

*Id.* ¶ 16.

Plaintiff alleges that LendingClub "initially approved [him] for a hardship waiver but later reversed the decision without proper disclosure[,]" and the hardship waiver agreement did not specify that payment was necessary for hardship waiver eligibility. ECF 4 at 4. From February to May 2025, Plaintiff sent several letters to LVNV and Resurgent requesting that they validate "the alleged debt." *Id.* From May to July of 2025, Plaintiff filed three complaints with the Consumer Financial Protection Bureau ("CFPB") against LVNV and Resurgent "due to repeated failure to validate the debt." *Id.* Plaintiff alleges that, despite these actions, "Defendants have continued to collect, report and maintain an unvalidated, inaccurate, and disputed debt on the Plaintiff's credit

file[,]" which has caused "significant harm" to Plaintiff's credit and finances as well as "emotional distress." *Id.*

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a civil complaint must contain enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation modified). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

This Court is mindful of its obligation to liberally construe self-represented pleadings, such as the instant Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). In evaluating such a complaint, the factual allegations are assumed to be true. *Erickson*, 551 U.S. at 93 (citing *Twombly*, 550 U.S. at 555–56). Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

## III. DISCUSSION

### A. Motion to Remand

Plaintiff moves to remand this case to state court, arguing that this Court lacks federal-question jurisdiction because he asserted claims under only Maryland law. ECF 10 at 2. He further argues that the defendants have not alleged that diversity jurisdiction exists. *Id.* at 3. He lastly contends that he is entitled to costs and expenses to deter "unwarranted attempts" to remove state-law claims like his. *Id.* at 4–5. LVNV and Resurgent point out that Plaintiff's complaint clearly asserts claims under federal law—specifically, the FCRA and the FDCPA—and argue that Plaintiff is not entitled to costs. ECF 12 at 2–4.

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (citation omitted). "[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). To determine whether a case falls within federal-question jurisdiction, a district court must "discern whether federal or state law creates the cause of action . . . . In cases where federal law creates the cause of action, the courts of the United States unquestionably have federal subject matter jurisdiction." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (quoting *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). Additionally, the court may exercise supplemental jurisdiction of state-law claims for which it lacks original jurisdiction if those claims "are so related

to claims in the action within [its] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

When a plaintiff files an action under federal law in state court, the case "may be removed by . . . the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The defendant seeking removal bears the burden of showing that the Court has jurisdiction over the removed action. *See Mulcahey*, 29 F.3d at 151 (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)); *Dixon*, 369 F.3d at 816.

Plaintiff's Complaint supports federal-question jurisdiction because Plaintiff asserts causes of action created by federal statutes based upon alleged violations of those statutes. The first page of Plaintiff's complaint alleges that Defendants violated 15 U.S.C. §§ 1681i and 1681g, which are part of the FCRA, and 15 U.S.C. § 1692e, which is part of the FDCPA. ECF 4 at 1. Under the "Violations" heading, the Complaint alleges violations of the same two federal statutes. *Id.* at 5. The FCRA and FDCPA are federal statutes passed by Congress, and each provides a private right of action for consumers affected by violations of those statutes to recover actual and/or statutory damages, *see* 15 U.S.C. §§ 1681n, 1681o, 1692k—precisely the relief Plaintiff seeks through this action, *see* ECF 4 at 5. Although the Complaint also alleges a violation of the MCPA, a Maryland statute, *id.*, the Court has supplemental jurisdiction over the state-law claim because it arises from the same "nucleus of operative fact" as Plaintiff's federal-law claims, *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); 28 U.S.C. § 1367(a). All of Plaintiff's state- and federal-law claims are about the defendants' treatment of debt stemming from a loan Plaintiff obtained.

The Court concludes that it has subject-matter jurisdiction over Plaintiff's claims and, therefore, remand to state court is inappropriate. Because the Court will deny Plaintiff's motion to

remand the case, Plaintiff's request for an award of costs is likewise denied. *Cf. Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005) ("[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal.").

**B. LVNV & Resurgent's Motion to Dismiss or for a More Definite Statement**

Plaintiff alleges that Defendants violated the FCRA, specifically 15 U.S.C. §§ 1681i and 1681g, "for the continued reporting of inaccurate information and failure to provide validation." ECF 4 at 5. He further alleges that Defendants violated the FDCPA, specifically 15 U.S.C. § 1692e, "for continued reporting without verification." *Id.* Lastly, he alleges that Defendants violated the MCPA "through deceptive practices regarding the hardship waivers and the collection of an unvalidated debt." *Id.*

Defendants LVNV and Resurgent argue that Plaintiff's Complaint does not contain enough facts to support any of his claims for relief. ECF 8-1. As to the FCRA, LVNV and Resurgent contend that Plaintiff alleges violations of inapplicable statutory provisions, and Plaintiff fails to allege facts supporting an inference that they violated any provision of the FCRA. *Id.* at 7–12. As to the FDCPA, LVNV and Resurgent argue that the Complaint lacks factual allegations sufficient to show that the loan account is a "debt" as defined by the FDCPA and that the defendants violated any provision of the FDCPA. *Id.* at 5–7. And as to the MCPA, LVNV and Resurgent argue that Plaintiff's allegations do not constitute "unfair, abusive, or deceptive trade practices" prohibited by the MCPA. *Id.* at 12–14. In the alternative, LVNV and Resurgent request that the Court require Plaintiff to file an amended complaint to correct his pleading deficiencies. *Id.* at 14.

Plaintiff argues that LVNV and Resurgent's motion should be denied because discovery has not begun and genuine disputes of material fact exist. ECF 13.

**1. Fair Credit Reporting Act**

Congress enacted FCRA "out of concerns about abuses in the consumer reporting industry." *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 414 (4th Cir. 2001). The statute "provides a series of requirements for handling consumer credit information in order to 'ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 802 (4th Cir. 2019) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)).

Plaintiff claims that LVNV and Resurgent violated 15 U.S.C. §§ 1681i and 1681g. ECF 4 at 1, 5. However, by their plain terms, these sections apply only to "consumer reporting agencies" ("CRAs"). *See* 15 U.S.C. §§ 1681i, 1681g. CRAs "assembl[e] or evaluat[e] consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties[.]" 15 U.S.C. § 1681a(f). LVNV and Resurgent deny that they are CRAs, ECF 8-1 at 8, and Plaintiff does not allege any facts suggesting that they are. Plaintiff alleges that LVNV and Resurgent "report[ed] inaccurate information," ECF 4 at 5, suggesting that these defendants are furnishers of credit information, rather than CRAs. *See* 12 C.F.R. § 1022.41(c) (defining "furnisher" in the context of the FCRA as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report").

The FCRA imposes certain duties on furnishers, *see generally* 15 U.S.C. § 1681s-2, but those duties are triggered only after the furnisher receives "notice pursuant to [15 U.S.C. §] 1681i(a)(2) . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," *id.* § 1681s-2(b)(1). Notice under § 1681i(a)(2) "must be given by a credit reporting agency, and cannot come directly from the consumer." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011) (collecting

citations); *see also Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87, 91 (3d Cir. 2017) (observing that, although a consumer may notify a furnisher directly about his dispute, "there is no private cause of action under § 1681s-2(b) for a furnisher's failure to properly investigate such a dispute"); *Chiang v. MBNA*, 620 F.3d 30, 30 (1st Cir. 2010) (describing consumer credit reporting agencies as playing the role of a "gatekeeper" under the statutory scheme). Once a CRA provides the required notice, the furnisher must:

> (1) investigate the disputed debt; (2) review all relevant information provided by the credit agency; (3) report the results of the investigation to the credit agency; and (4) if the investigation finds that the information was incomplete or inaccurate, report those results to all other credit agencies and modify or delete the information, as appropriate.

*Banerjee v. Nationwide Recovery Serv., Inc.*, Civ. No. PX-20-2751, 2022 WL 17552529, at *3 (D. Md. Dec. 9, 2022), *aff'd*, No. 22-2323, 2023 WL 6410943 (4th Cir. Oct. 2, 2023) (citing 15 U.S.C. § 1681s-2(b)(1)).

To state a claim under § 1681s-2(b), a plaintiff must allege "(1) that she notified a CRA of the disputed information, (2) that the CRA notified the [d]efendant furnisher of the dispute, and (3) that the furnisher then failed to reasonably investigate and modify the inaccurate information." *Long v. Pendrick Cap. Partners II, LLC*, 374 F. Supp. 3d 515, 527 (D. Md. 2019) (citing *Johnson v. MBNA Am Bank, NA*, 357 F.3d 426, 430–31 (4th Cir. 2004)).

Here, Plaintiff fails to state a claim because he does not allege that he notified a CRA of the dispute. Although Plaintiff alleges that he directly contacted Resurgent and LVNV, ECF 4 at 4, the notice required to trigger a furnisher's duties under § 1681s-2(b) "cannot come directly from the consumer[,]" *SimmsParris*, 652 F.3d at 358. Plaintiff also alleges that he filed multiple complaints with the CFPB against Resurgent and LVNV, ECF 4 at 4, but the CFPB "is not in the business of assembling and evaluating consumer credit information, and is thus not a 'consumer

reporting agency' under the FCRA[,]" *Harris*, 696 F. App'x at 91. Rather, the CFPB is an "Executive agency established within the Federal Reserve System to 'regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws.'" *Id.* (quoting 12 U.S.C. § 5491(a)); *see also Greene v. LexisNexis Risk Sols. Inc.*, Civ. No. 23-3107 (RMB-EAP), 2024 WL 471573, at *3 (D.N.J. Feb. 7, 2024) (dismissing § 1681s-2(b) claim where plaintiff disputed information through the CFPB rather than a consumer reporting agency). A complaint submitted to the CFPB does not trigger a furnisher's duties under § 1681s-2(b).

Plaintiff also alleges that Defendants violated the FCRA by "fail[ing] to provide validation" of the debt. ECF 4 at 4. However, Plaintiff fails to identify any provision of § 1681s-2, or the FCRA generally, that requires a furnisher to provide validation of a debt account. Rather, the FDCPA contains provisions requiring debt validation, as discussed in Part III.B.2. *infra*.

Accordingly, Plaintiff's FCRA claim against LVNV and Resurgent must be dismissed.

**2. Fair Debt Collection Practices Act**

Congress enacted the FDCPA "to protect consumers from debt collectors who engage in 'abusive, deceptive, and unfair debt collection practices,' and 'to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" *Hart v. Pac. Rehab of Md., P.A.*, Civ. No. ELH-12-2608, 2013 WL 5212309, at *8 (D. Md. Sept. 13, 2013) (quoting 15 U.S.C. § 1692(e) and citing *United States v. Nat'l Fin. Servs. Inc.*, 98 F.3d 131, 135 (4th Cir. 1996)). The FCDPA "applies only to conduct used to collect a 'debt.'" *Id.* A "debt" under the FDCPA is "any obligation . . . of a consumer to pay money arising out of a transaction . . . primarily for personal, family, or household purposes[.]" 15 U.S.C. § 1692a(5).

"To state a claim under the FDCPA, a plaintiff must allege that: (1) 'the plaintiff has been the object of collection activity arising from consumer debt'; (2) 'the defendant is a debt collector

as defined by the FDCPA'; and (3) 'the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Jackson v. Sagal*, 370 F. Supp. 3d 592, 600 (D. Md. 2019) (citation modified) (quoting *Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F. Supp. 2d 577, 585 (D. Md. 2013)).

Here, Plaintiff alleges that LVNV and Resurgent violated 15 U.S.C. § 1692e for "continued reporting without verification" of his debt. ECF 4 at 5. But no provision of § 1692e proscribes reporting a debt "without verification." Instead, § 1692e prohibits debt collectors from using "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The Complaint does not contain any allegations that LVNV and Resurgent used "false, deceptive, or misleading" methods in collecting a debt. It does not identify any specific representations or methods that these defendants employed, nor explain how those representations or methods were false, deceptive, or misleading.

The provision of the FDCPA that deals with debt validation is 15 U.S.C. § 1692g. "Section 1692g requires a debt collector to send a consumer, either in its initial communication or within five days of its initial communication, a written notice containing" certain information related to the debt. *Miller v. Payco-Gen. Am. Credits, Inc.*, 943 F.2d 482, 483 (4th Cir. 1991) (citing 15 U.S.C. § 1692g(a)). Under § 1692g(b), "[i]f the consumer, in writing, disputes the debt or requests the name of the original creditor, then the collector must halt all collection efforts until it mails verification of the debt or the creditor's name to the consumer." *Miller*, 943 F.2d at 483 (citing 15 U.S.C. § 1692g(b)). The consumer must do so "within thirty days after receipt of the [initial written] notice[]" from the debt collector. 15 U.S.C. § 1692g(a), (b).

Plaintiff fails to state a claim under § 1692g. He does not plead facts suggesting that the debt account in question is a "debt" in the meaning of the FDCPA. There are no facts in the Complaint from which the Court could infer that the loan was for "personal, family, or household

purposes" and therefore subject to the FDCPA. 15 U.S.C. § 1692a(5). Additionally, there is no allegation in the Complaint that LVNV and Resurgent failed to send the initial written notice required by § 1692g(a). As to § 1692g(b), the Complaint states only that Plaintiff sent a letter to LVNV and Resurgent "requesting verification of the alleged debt" on February 24, 2025. ECF 4 at 4. Plaintiff does not state facts indicating when LVNV and Resurgent sent the initial notice, so the Court cannot determine whether Plaintiff sent the debt verification request within 30 days of receipt of the initial notice.

Accordingly, Plaintiff's FDCPA claim against LVNV and Resurgent must be dismissed.

**3. Maryland Consumer Protection Act**

The MCPA provides in relevant part that "[a] person may not engage in any unfair, abusive, or deceptive trade practice . . . in . . . [t]he extension of consumer credit." Md. Code Ann., Com. L. § 13-303(4). A plaintiff bringing an action under the MCPA "must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012); *see also Bank of Am., N.A. v. Jill. P. Mitchell Living Tr.*, 822 F. Supp. 2d, 505, 532 (D. Md. 2011) ("Consumers must prove that they relied on the misrepresentation [or deceptive practice] in question to prevail on a damages action under the MCPA."). To establish an actual injury, the injury "must be objectively identifiable . . . measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007).

Plaintiff does not allege a plausible violation of the MCPA by LVNV or Resurgent. The Complaint indicates that LendingClub—not LVNV or Resurgent—failed to make certain disclosures, or omitted certain information, regarding the hardship waiver. *See* ECF 4 at 4. And although the Complaint alleges that LVNV and Resurgent engaged in "deceptive practices"

through "the collection of an unvalidated debt[,]" *id.* at 5, it does not allege that Plaintiff acted in reliance upon any deceptive practice by either defendant. Additionally, Plaintiff fails to allege an objectively identifiable injury. He alleges "significant harm" to his "credit [and] financial" situation and "emotional distress." *Id.* at 4. But those allegations do not constitute an "objectively identifiable" injury because Plaintiff does not identify any specific monetary loss resulting from the defendants' alleged conduct or indicate the amount of damages that he seeks.

Accordingly, Plaintiff's MCPA claim against LVNV and Resurgent must be dismissed.

**C. LendingClub's Motion to Compel Arbitration and Stay Proceedings**

Defendant LendingClub moves this Court to compel arbitration of the claims Plaintiff asserts against it. ECF 14. LendingClub argues that the agreement that Plaintiff signed to obtain the loan contained an arbitration clause that applies to Plaintiff's claims. ECF 15 at 6–11.

The Federal Arbitration Act ("FAA") provides that, in any contract involving interstate commerce, a contractual provision in which the parties agree to arbitrate their disputes shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided . . . ." 9 U.S.C. § 2. This statute "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 631 (1985)). "When the parties have agreed to an arbitration clause . . . courts apply 'a presumption of arbitrability,' such that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Waterford Inv. Servs., Inc. v. Bosco*, 682 F.3d 348, 353 (4th Cir. 2012) (first quoting *Washington Square Sec., Inc. v. Aune*, 385 F.3d 432

(4th Cir. 2004), and then quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Section 3 of the FAA provides that when an agreement between the parties directs a claim brought in court to arbitration, the court "shall" stay the trial of that issue until arbitration has concluded. 9 U.S.C. § 3; *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22 n.27.

To prevail on a motion to compel arbitration under the FAA, the moving party must show "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [other party] to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); *see also Wood v. Uber Techs., Inc.*, Civ. No. TDC-23-2149, 2024 WL 69926, at *3 (D. Md. Jan. 5, 2024). All four factors are satisfied in this case.

First, a dispute exists between the parties. Plaintiff has asserted claims for relief against LendingClub for alleged violations of law and seeks an award of monetary damages. ECF 4. LendingClub has moved to compel arbitration or, alternatively, to dismiss the Complaint for failure to state a claim, ECF 15, which Plaintiff opposes, ECF 17; ECF 20-1.

Second, the Borrower Agreement that Plaintiff signed encompasses the dispute here. Plaintiff states that "Defendant has failed to meet its burden to establish a valid and enforceable

arbitration agreement applicable to this dispute," ECF 17, but he offers no substantive argument or facts that undermine the validity the Borrower Agreement or its arbitration provision specifically. A valid contract requires an offer, acceptance, and consideration. *See, e.g.*, *Hampton v. Wells Fargo Bank, N.A.*, Civ. No. ABA-25-1935, 2026 WL 602089, at *5 (D. Md. Mar. 4, 2026) (citing *Braude v. Robb*, 279 A.3d 1153, 1162 (Md. Ct. Spec. App. 2022)). The declaration and exhibit attached to LendingClub's motion establishes each of these elements in the formation of the Borrower Agreement between the parties and its arbitration provision.[2] *See* ECF 15-1.

Plaintiff states that LendingClub "waived" its contractual right to elect arbitration "through litigation conduct[,]" ECF 17, but fails to support this conclusory assertion by citation to any facts or legal authority. In his Complaint, Plaintiff alleges violations of the FCRA, FDCPA, and MCPA. ECF 4 at 1, 5. The arbitration section of the Borrower Agreement defines "Claim" as "any past, present, or future claim involving you . . . and us . . . relating to . . . any loan application, loan request, or loan[.]" ECF 15-1 at 11 ¶ 16. It indicates that "Claims are subject to arbitration regardless of whether they arise from . . . statute . . . or any other legal theory." *Id.* Plaintiff's claims fall squarely within the scope of the arbitration provision.

Third, the transaction at issue in the case implicates interstate commerce. Plaintiff's loan agreement was financed with proceeds from outside of Maryland. ECF 15-1 ¶ 9. That transaction constitutes interstate commerce. *See Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012) (holding that "reliance upon funds from a foreign source in a transaction is sufficient to implicate the FAA").

---

[2] "A mutual promise to arbitrate constitutes sufficient consideration for an arbitration agreement." *Bopda v. Comcast of the Dist., LLC*, Civ. No. PJM-22-2889, 2023 WL 6292767 (D. Md. Sept. 27, 2023), *aff'd*, No. 23-2148, 2024 WL 399081, at *2 (4th Cir. Feb. 2, 2024).

Fourth, Plaintiff has declined to arbitrate the dispute and, instead, filed suit and opposed LendingClub's motion to compel arbitration.

The Court finds that LendingClub has satisfied its burden of showing that compelling arbitration is appropriate in this matter. Accordingly, the Court shall grant LendingClub's motion to compel arbitration and shall stay proceedings related to Plaintiff's claims against LendingClub in this action pending arbitration.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand will be DENIED, Defendants LVNV and Resurgent's Motion to Dismiss will be GRANTED, Defendant LendingClub's Motion to Compel Arbitration and Stay Proceedings will be GRANTED, and Plaintiff's Motion for Leave to File Response Out of Time will be GRANTED. Accordingly, Plaintiff's Complaint will be DISMISSED WITHOUT PREJUDICE as to the claims against LVNV and Resurgent, and this action will be STAYED pending arbitration as to the claims against LendingClub. A separate Order will follow.

September 30, 2026
Date

Matthew J. Maddox
United States District Judge